**TINSLEY, Plaintiff, v. CINCINNATI (City) et, Defendants.**

Common Pleas Court Hamilton County.

No. A-148422.   Decided March 29, 1957.

420

C. Watson Hover, County Pros., William J. Schmid, Asst. Pros. Atty., for Board of County Commissioners.

Harry Gehler, for plaintiff.

Henry M. Bruestle, City Solicitor, J. B. Grause, Jr., William A. McClain, Edward A. Hogan, Asst. City Solicitors, for the City of Cincinnati.

## OPINION

By LEIS, J.:

This is an action for personal injuries sustained by the plaintiff when he fell to the ground from the fourth floor of a building while in the process of washing windows. The building, situated on Lincoln Park Drive in Cincinnati, Ohio, is owned by the City of Cincinnati. The entire building was leased to Hamilton County, but some time prior to plaintiff's fall, Hamilton County leased back to the City of Cincinnati the fourth floor of the building. The fourth floor of the building was at the time of the accident used for the purposes of Smoke Abatement.

The defendants have demurred to plaintiff's second amended petition under the authority of §2309.08 (E) and (J) R. C.

The Court will treat first the grounds of the demurrer under §2309.08 (J) R. C., that the petition does not state facts which show a cause of action.

As to the defendant, Board of County Commissioners of Hamilton County, Ohio, the Court feels that a demurrer will lie. Counsel refer to **Commissioners of Hamilton County v. Mighels, 7 Oh St 109.** In one hundred years, the rule laid down by this case has not been disturbed. The cited case is determinative of the issue here as it pertains to the defendant county. The Mighels case states:

"The board of commissioners of a county are not liable, in their quasi corporate capacity, either by statute or at common law, to an action for damages for injury resulting to a private party by their negligence in the discharge of their official functions."

That they were in the discharge of their official duties in this instance is not to be denied. The building in question is used .by the County Welfare Agency for the relief of the poor. Relief of the poor is an official function of the county. See page 119 of the Mighels case, supra.

"It is the general rule that counties and boards of county commissioners are immune from tort liability unless such liability is predicated upon statute." 14 O. Jur. (2d) 385; see also 38 Am. Jur. 260.

"The reason for such exemption from liability is that organizations of the kind referred to (counties, townships, school districts) are mere territorial and political divisions of the state, established exclusively for public purposes connected with the administration of local government." 11 O. Jur. 538.

See also State, ex rel. Bowman v. Board of Commissioners, 124 Oh St 174, and Babin v. City of Ashland, 160 Oh St 328, which discuss the entity of the county.

As to the defendant, City of Cincinnati, plaintiff claims that regardless of the nature of the function being carried out on the fourth floor of the building by the city, as regards the relationship of the city and the plaintiff, the function was proprietary and hence liability exists.

It is generally recognized that a city is exempt from tort liability in the exercise of governmental functions, but that no immunity exists in the exercise of proprietary functions. The rule, easy of statement, is more difficult of application. See Ellis' Ohio Municipal Code, Sections 15.1 and 15.2.

A leading Ohio case on the subject of municipal tort liability is that of City of Wooster v. Arbenz, 116 Oh St 281. Though the facts in that case are not similar to the ones at hand, the language used by Chief Justice Marshall is pertinent to the question of tort liability at issue here:

"This court is for the present committed to the doctrine that there is no liability on the part of a municipality in actions for tort, if the function exercised by the municipality at the time of the injury to the plaintiff was a governmental function. The nonliability for governmental functions is placed upon the ground that the state is sovereign, that the sovereign cannot be sued without its consent, and that the municipality is the mere agent of the state and therefore cannot be sued unless the state gives its consent by legislation. * * *"

"The court is equally committed to the doctrine that if the function being exercised is proprietary and in pursuit of private and corporate duties, for the particular benefit of the corporation and its inhabitants, as distinguished from those things in which the whole state has an interest, the city is liable. * * *

"First of all, let us ascertain the tests whereby these distinctions are made. In performing those duties which are imposed upon the state as obligations of sovereignty, such as protection from crime, or fires, or contagion, or preserving the peace and health of citizens and protecting their property, it is settled that the function is governmental, and if the municipality undertakes the performance of those functions, whether voluntarily or by legislative imposition, the municipality becomes an arm of sovereignty and a governmental agency and is entitled to that immunity from liability which is enjoyed by the state itself. If, on the

other hand, there is no obligation on the part of the municipality to perform them, but it does in fact do so for the comfort and convenience of its citizens, for which the city is directly compensated by levying assessments upon property, or where it is indirectly benefited by growth and prosperity of the city and its inhabitants, and the city has an election whether to do or omit to do those acts, the function is private and proprietary."

The Court can not subscribe to plaintiff's contention that irrespective of the nature of the city's function, as regards its relationship to the plaintiff, the city's function was proprietary. 38 Am. Jur. 287, states:

"The rule of municipal immunity for liability for torts committed while in the performance of a governmental function applies in cases in which the injured party is an employee of the municipal corporation, as well as when the injured party is a third person."

It therefore follows that the city is clothed with immunity against any such persons, be they employees, employees of independent contractors, or frequenters, so long as the function is governmental.

The Court must determine, therefore, whether the operation by a city of a building which houses a Smoke Abatement League on one of its floors, and leases other floors to a county for welfare work constitutes a governmental function. If the function is governmental, the building which houses this function is immune.

"The exemption of municipal corporations from liability for personal injury in connection with the conduct of public and governmental functions has been held to extend to injuries arising from the unsafe and defective condition of all public buildings and other public places used in connection with such functions as fully as to those resulting from the negligent acts of employes or from the negligence of persons employed to care for the same. * * *" 38 Am. Jur. 304.

The Court believes that the use of the fourth floor for Smoke Abatement purposes is a governmental function, and the building which housed this function is within the scope of the municipal immunity. Discharge of dense smoke into the atmosphere of a populous city, causing large quantities of falling soot and rendering the air difficult and injurious to health does not only constitute a public nuisance but is a danger to the public health.

"Public health and sanitation are broad objects of the police power and their protection and promotion within a municipality constitute important and far-reaching functions of municipal government. Not only do municipal corporations have power to protect and promote public health and improve sanitation, but it is their duty to do so." 7 McQuillan, Municipal Corporations, 48.

Counsel for plaintiff argues with ability the applicability of §§4101.11 and 4101.12 R. C., to the instant case. Is an employee of an independent contractor protected by the provisions of these two sections when the employer of the independent contractor is a city, and the employee of the independent contractor is injured in a building which is used by the city for a governmental function? The Court thinks not.

As cited above, the general rule is that the immunity of the muni-

cipality extends even to its own employees. The statutes here, being in derogation of the common law must be strictly construed.

City of Wooster v. Arbenz, supra; **Standard Fire Insurance Co. v. City of Fremont, 164 Oh St 344.**

Counsel for plaintiff cites the Court to §4123.01 R. C., which defines "employee" to mean "every person in the service of the state, or of any county, municipal corporation, township, or any school district therein, * * *" The definitions under §4123.01 R. C., refer only to §§4123.01 to 4123.94 R. C., and do not pertain to the section in dispute, §4101.11 R. C. Nor do the cases cited by counsel definitely interpret §4101.11 R. C.

The legislature has not seen fit to set down a statute which places these duties enumerated under §4101.11 R. C., upon a municipality engaged in governmental functions, and this Court will not invade the province of the legislature by so doing.

Plaintiff in his second amended petition does not plead facts which require or permit the conclusion that the defendant city was acting in a proprietary function. Such a petition is insufficient against a general demurrer. See Huffman v. City of Columbus, 51 N. E. (2d) 410.

The demurrer of the city is well taken and will be sustained.

The demurrers being sustained on the grounds of §2309 **(J)** R. C., there is no need to discuss the merits of the demurrers on the grounds of §2309 **(E)** R. C., misjoinder of parties defendant.

Please present your entries accordingly.